Kirkpatrick, C. J., and Rossell, J.
Were of opinion that the order of the sessions, affirming the order of the two justices, ought to be affirmed.
Pennington, J.
As I entertain a different opinion from my brethren, it is proper I should express my reasons for such opinion.
It is admitted that the pauper was settled by birth in Amwell: the question for this court to determine is whether, from the facts stated in the ease, he did not afterwards gain a settlement in Hopewell ? And if he did, then whether he did not afterwards gain a settlement in Montgomery ? It is contended, by Amwell that the pauper gained a settlement in Hopewell, by serving an apprenticeship of one year there. To gain a settlement in this respect, the pauper must have served an apprenticeship, under indenture, for the space of one full year, in Hopewell. Almost every requisite to con- *19 statute this service is denied, on the part of Hopewell, to exist in the present case. First, it is said that the instrument is not indented, and therefore, that [*] there was no indenture. In the first part of the reign of George the Second, it was so adjudged, even in settlement cases, which adjudications gave rise to the 31 Geo. 3, curing the evil; and whether that statute is to he considered as extending to this State or not, I apprehend at this day an objection arising from a defect of this kind, cannot be set up. Second, it is said that the instrument does not contain the word apprentice, and therefore a service under it was not an apprenticeship. If there was a substantial binding in every other respect, I should incline to get over this objection as too technical, yet I do not see very well how we are to get rid of the authorities. It is laid down in 4 Bae. 537, that an apprentice must be retained by the name of an [323] apprentice expressly, otherwise he is no apprentice, though bound; 1 Burn’s J. 60, referring to Dalton’s Justice, recognizes the same principle : the reason for this no doubt is, that there is a material difference between a servant and an apprentice. Third, it is said that the instrument does not contain any agreement that the pauper was to learn any art, trade, or mystery, which every indenture of apprenticeship requires. It appears to me that this is a fatal objection. When I look into the books to find the meaning of the word apprentice, I perceive that it is derived from the word apprendre, to learn, and that it is defined in the following words — “A young person, bound by indenture, to a tradesman or artificer, who, upon certain covenants, is to teach him his mystery or trade.” It is true, apprentices are not confined to tradesmen or artificers; husbandmen may take apprentices, but in doing of it, they covenant to learn them the art and mystery of husbandry. I take it to be essential to every legal indenture of apprenticeship, that the master or mistress must engage or covenant to learn the apprentice some trade, art, or mystery; it is that *20 which distinguishes it from menial service. We find in England young women are bound apprentices to learn the art and mystery of housewifery; to constitute an apprenticeship something is to be learned; it is the characteristic mark of the service to be performed, [*] and there can be no apprenticeship without it. A fourth objection raised on the part of Hopewell, is, that the pauper never signed, sealed, or delivered the instrument, but that this was only done by the father of the pauper and the person to whom he was bound. I am of opinion, that under our act of Assembly at least, this is also a fatal objection to the instrument, so far as it goes to constitute an apprenticeship; it is not the father that binds the apprentice, but it is the appi’entice that binds himself, with the consent of his parent or guardian. This consent is properly required to prevent improvident acts of the infant. The parent or guardian may enter into covenants in the instrument to secure and indemnify the master, that will bind them, but these covenants are not the act of binding; an indenture would be good without them.
As to the question arising on the manner of computing time, so learned and ingeniously argued by the counsel on both sides, it is not necessary for me to give an opinion; and I am induced to decline doing so, as it' may possibly affect the interest of the township of Montgomery, that township not being before the court. I am of opinion that both orders ought to be quashed.
The orders of sessions affirmed.
CiyED nr Overs, of Nor. Brunswick v. Overs, of Franklin, 1 Harr. 535.